# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CENTURY SURETY COMPANY**

**VERSUS**

**BASSAM NAFEL**

**CIVIL ACTION**

**NUMBER 14-101-JWD-RLB**

## RULING AND ORDER

## I.  Introduction: Summary of Ruling

The matter before the Court is the Motion for Summary Judgment filed by Plaintiff, Century Surety Company ("Century" or "Plaintiff"). (Doc. 31.) Three Parties—Defendant, Bassam Nafel ("Nafel" or "Defendant"); Defendant in Intervention, Whitney Bank ("Whitney"); and Plaintiff in Intervention, Certain Underwriters at Lloyd's London ("Underwriters")—have all filed oppositions. (Docs. 37, 35, and 36, respectively.) Century has filed replies to each opposition (Docs. 41, 40, and 39, respectively.) The Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship among the Parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

This is an insurance coverage dispute. Plaintiff seeks rescission of a commercial lines insurance policy it issued to Defendant. The policy provided coverage for Nafel's property located at 8282 Stern Avenue, Baton Rouge, Louisiana, which suffered a total fire loss on July 11, 2013. (Doc. 1-2 at 51.)

Century has filed the current Motion for Summary Judgment, contending that it is entitled to have the policy declared void *ab initio* under Section 22:1311(F) of Louisiana Revised

Statutes[1] because Nafel willfully made material misrepresentations in his insurance application with the intent to deceive the insurer. (Doc. 31 at 1-2.) Alternatively, Century argues that it is entitled to rescission of the policy under Section 22:1314 because Nafel provided false information which increased the moral and physical hazards under the policy. (*Id*. at 2.) Regardless of which reasons is accepted, Century asserts that, should this Court grant its Motion for Summary Judgment, then all the counterclaims filed by Defendant Nafel and Intervenors, Whitney and Underwriters, must be dismissed as a matter of law, and Nafel must be ordered to reimburse the $20,000.00 advance paid to him by Century. (*Id*.)

Century first argues the policy issued to Nafel is void *ab initio* under Section 22:1311(F). For purposes of this section, the issue is whether Nafel made a material misrepresentation on his insurance application with the intent to deceive the insurer. A misrepresentation is material if the insurer knowing the truth would not have issued the policy or would have issued the policy at a higher premium.

In response, Defendant contends that any alleged misrepresentations on the application were due either to an error by the insurance agent who filled it out or to a miscommunication between the insurance agent and himself. Because it is undisputed that the agent filled out the application and because Plaintiff has failed to show that Defendant reviewed or read the application prior to signing it, the Defendant has raised an issue of fact as to whether he or the agent misrepresented facts on the application. Defendant argues—and this Court agrees—that an issue of fact as to the "intent to deceive" element thus exists. On those facts, summary judgment cannot be granted pursuant to the Federal Rules of Civil Procedure.

In the alternative, Century urges that the policy should be rescinded under Section 22:1314. To avoid liability under this section, the insurer must again show that the insured made

---

[1] In this ruling, any and all references to "Section" [] or "§ []" are to a provision of Louisiana Revised Statutes.

a representation on the insurance application. For the same reasons that this Court rejects Century's first basis for summary judgment, this Court finds that a genuine issue of material fact remains unresolved. As Plaintiff has failed to satisfy its burden of proof as to its second claim, it is thus not entitled to summary judgment on the basis of this second disputed route.

## II.    Background Facts

Nafel owns three rental properties in Baton Rouge, Louisiana: (1) 1135 Monet Drive ("Monet Property"); (2) 1140 North Donmoor ("Donmoor Property"); and (3) 8282 Stern Avenue ("Stern Property"). (Doc. 37-1 ¶ 2). In March of 2013, Nafel went to Prime Insurance Group to inquire about obtaining property insurance to cover the three properties. (Doc. 37-1 ¶ 2; Doc. 1-4 ¶ 5). The application process consisted of one insurance agent, Ms. Dawn Loup ("Loup"), asking Nafel a series of questions. (Doc. 37-1 ¶ 3; Doc. 1-4 ¶ 6.) Loup then filled out the application, and Nafel signed it. (*Id.*).

On the application signed by Nafel, the following two questions are answered "no":

- Any policy or coverage declined, cancelled or non-renewed during the prior three years?
- Have any crimes occurred or been attempted on your premises within the last three years?

(Doc. 31-4 at 1, 6.) The Loss History section of the application contains no information. (*Id.* at 2.) On the application, Nafel's signature appears below the following statement:

The undersigned is an authorized representative of the applicant and certifies that reasonable enquiry has been made to obtain the answers to questions on this application. He/she certifies that the answers are true, correct and complete to the best of his/her knowledge.

(*Id.* at 1.) As part of the application for insurance, Nafel executed a "Statement of No Loss." (Doc. 31-3.) Therein, Nafel "certif[ied] that there have been no losses, accidents or circumstances that might give rise to a claim under the insurance policy whose number is shown from 12:01 AM on 4/19/08 to 4-19-13 12:00 PM." (*Id.* at 29.)

On April 19, 2013, Century issued to Nafel a "commercial lines policy," which provided general liability coverage and commercial property coverage on all three properties. (Doc. 1-2.) The effective period of the policy was April 19, 2013 through April 19, 2014. (*Id.* at 4.) Coverage for the Stern property was in the amount of $351,000.[2] (*Id.* at 94.)

On July 11, 2013, a fire occurred at the Stern Property, resulting in a total loss. (Doc. 1.) Century received a Property Loss Notice on July 31, 1013,[3] and began its investigation of the claim. (Doc. 31-2 at 5.) The investigation included (1) a recorded statement with a Century fire investigator on November 1, 2013, and (2) an examination under oath ("EUO") conducted by Century's attorney on January 13, 2014. (Doc. 31-1 ¶¶ 17, 19; Doc. 7 at 10.) On August 26,

---

[2] Initially, coverage on the Stern Property was in the amount of $500,000. (Doc. 1-2 at 51.) However, after inspection of the property, the coverage amount was decreased to $351,000 to better reflect the value of the property. (Doc. 1-4 ¶¶ 29-32.)

[3] In its statement of undisputed facts, Century asserts that "Nafel presented a claim to [it] for a fire loss" on July 31, 2013. (Doc. 31-1 ¶ 16.) Nafel does not dispute this in his Response to Century's Statement of Uncontested Facts. (Doc. 37-5 ¶ 16.) However, it is worth noting that Nafel notified Loup of the fire loss on July 11, 2013, via telephone. (Doc. 1-4 ¶ 33.) And, that same day, Loup telephoned SGA South to notify it of the fire loss. (*Id.* ¶ 36.) On July 31, 2013, Loup emailed to Cheryl Chenevert of SGA South the claim form and requested a rush on it to assess damages. (Doc. 31-3 at 52.) According to her email, Loup "thought [the claim] was in process when [she] called and told [Cheryl Chenevert] about the loss on 7/11/13," and she "was not aware [she] had to submit a loss form." (*Id.*)

2013, Century issued an advance of $20,000.00 to Nafel. (Doc. 31-13; *see also* Doc. 1 ¶ 26; Doc. 7 at 11.)

During his EUO, Nafel testified that he had filed two previous insurance claims relating to the properties insured by the policy. The first claim was for a fire loss at the Donmoor property in 2011. (Doc. 1-11 at 3). The second claim was for vandalism and theft occurring at the Stern Property in 2012. (*Id.* at 4-5).

Century maintains that its investigation unearthed even more. First, it discovered that insurance on the Donmoor Property, issued by Universal Specialty Underwriters, Inc., had been cancelled on July 23, 2010, for lack of nonpayment. (Doc. 31-2 at 14.) Second, the Stern Property had been vandalized in October of 2010 and reported to the East Baton Rouge Sheriff's Office on October 13, 2010. (*Id.* at 15.)

Due to these findings, Century denied the claim and, on February 14, 2014, filed the instant action seeking rescission of the insurance policy based on material misrepresentations allegedly made by Nafel on his application and in interviews following the fire. (Doc.1.) Additionally, Century's Complaint prays for reimbursement of the $20,000.00 advanced to Nafel on the basis of unjust enrichment. (*Id.*) Nafel counter-claimed, alleging that Century acted in bad faith in violation of Section 22:1973.[4] (Doc. 7.)

On May 2, 2014, Whitney Bank filed a Motion to Intervene as Defendant, (Doc. 16), which was granted on May 6, 2014, (Doc. 17). Whitney then filed an Answer to Century's Complaint and asserted a counterclaim against Century and Nafel.[5] (Doc. 18.) Whitney's counterclaim seeks a declaration from this Court that it is entitled to "the proceeds of all

---

[4] Nafel's counterclaim cited Section 22:1220. This statute was re-designated Section 22:1973 by Acts 2008, No. 415, § 1.

[5] Whitney is a defendant in intervention in this claim, but its "counterclaim" asserts claims against both Century and Nafel.

insurance protecting the Stern Property payable by Century Surety Company." (*Id*. at 9.) Additionally, Whitney asks this Court to order Nafel to pay to Whitney the $20,000.00 advancement paid to him by Century. (*Id*. at 10.)

On June 12, 2014, Underwriters filed a Motion for Leave to File a Complaint for Intervention (Doc. 24), which was granted on July 10, 2014, (Doc. 25). Underwriters intervened on the basis of its belief that "[t]he outcome of the present action may affect coverage under the Underwriters Policy." (Doc. 24 at 3.) In its Complaint for Intervention, Underwriters names Century, Nafel, and Whitney as defendants. (Doc. 26.)

## III. Preliminary Matter – Century's Objection to the Affidavit of Bassam Nafel

In support of his Opposition to Century's Motion for Summary Judgment, Nafel attached a three page affidavit consisting of 14 separate statements. (Doc. 37-1.) Century objects to Nafel's affidavit, apparently in its entirety. (Doc. 41.) It does so by contending that several statements made in this affidavit are directly contrary to testimony given by Nafel during his EUO. (*Id.* at 3-5.)

### A. Law on Statements in Affidavits that are Inconsistent with Prior Sworn Testimony

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). Century objects to Nafel's affidavit on the basis that it is inconsistent with his prior EUO testimony. (Doc. 41 at 2.) It says so expressly: "Nafel's affidavit

. . . should be disallowed and not considered by this Court as it contradicts his prior sworn testimony given during his examination under oath." (*Id.*)

It is well-established that a party may not "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also* 10A CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE & PROCEDURE § 2726 (3d ed.) ("It seems quite clearly correct to conclude that an interested witness who has given clear answers to unambiguous questions cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, without providing a satisfactory explanation of why the testimony is changed."). In *Copeland v. Wasserstein, Peralla & Co.*, 278 F.3d 472 (5th Cir. 2002), the Fifth Circuit explained:

> [W]hen the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict. This jurisprudential rule has evolved from cases in which opposing parties had provided the affidavit and the deposition; but it applies equally to situations such as this, when the affidavit contradicts prior sworn testimony by the affiant himself.

*Id*. at 482 (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992) ("[A] nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue.")); *see also Love v. Motiva Enters. LLC*, 349 F. App'x 900, 903-04 (5th Cir. 2009) (the district court properly disregarded statements that were inconsistent with the plaintiff's prior deposition testimony that she had no knowledge of a fact).

On the other hand, an affidavit that "merely supplements rather than contradicts prior deposition testimony" may be considered when resolving the motion for summary judgment. *S.W.S. Erectors, Inc.*, 72 F.3d at 496. "Permissible supplementation includes providing 'greater

detail or additional facts not previously provided in the deposition.'" *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (quoting *S.W.S. Erectors, Inc.*, 72 F.3d at 496).

In addition, Fifth Circuit precedent "is well-settled that 'on a motion for summary judgment a court will disregard *only the inadmissible portions* of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion.'" *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (emphasis added) (quoting *Lee v. Nat'l Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980)); *see also Billiot v. Key Energy Servs.*, No. 09-1023, 2011 WL 1841433, at *2 (W.D. La. May 12, 2011).

### B.  Application of Law on Inconsistent Statements to Nafel's Affidavit and EUO

Based on this law, the Court will address only those affidavit paragraphs which Century has alleged to be inconsistent with Nafel's prior sworn testimony. (Doc. 39 at 4-5.)

Century first objects to the following statements in Nafel's affidavit:

3)   During the March 2013 application process with Dawn Loup, Ms. Loup asked me several questions regarding the aforementioned properties and I provided her with truthful information in response to her questions to the best of my knowledge.

4)   Dawn Loup completed the application forms that were submitted with the application for insurance which resulted in the issuance of Century Surety Policy No. CCP 814372, which is the subject of this lawsuit.

5) I relied upon Dawn Loup to accurately fill out the application forms based on the questions that she asked me and my responses to those questions.

6) The application forms that I signed were provided to me by Dawn Loup and had been completed by Ms. Loup.

7) At the time I signed the application forms provided to me by Dawn Loup, I had no reason to believe these forms contained any false, misleading or inaccurate information.

(Doc. 37-1 ¶¶ 3-7). Century contends that each of these statements are directly contradicted by Nafel's EUO testimony that "Loup filled out the Application based on information he provided to her <u>as she went through the application and explained it to him</u>." (Doc. 39 at 4 (emphasis in original).) The portion of Nafel's testimony so characterized reads:

Q: All right. So this is the application form that you filled out when you were doing the application for insurance.

A: Actually, she's [Dawn Loup] the one that did it.

Q: And you signed the bottom; is that correct?

A: I signed the bottom, yeah, and she already -- when I agree on it, she called me back. I went over there and we signed the paper and *she talked to me about it*, and I gave her the check.

***

> Q:    That's a five-page application. Did you fill that out or did you sit down and talk with Dawn and she filled it out?
>
> A:    She *explain* [sic] *it to me* and I – she did it, you know, but I signed my name here.

(Doc. 31-6 at 6-7 (emphasis added).)

Construed *in toto*, Nafel's statements are not actually inconsistent with his EUO. In his affidavit, Nafel declares that he relied on Loup to fill out the accurately fill out the application and that he "had no reason to believe these forms contained any false, misleading or inaccurate information." (Doc. 37-1.) Nafel did not testify in his EUO that he read or reviewed the application; rather, he only averred that Loup explained its content to him as he "talk[ed] and she "filled it out." Only had Nafel insisted that he had once read every question posed and every answer adduced by Loup, found each answer to be absolutely a truthful and accurate embodiment of his oral response, would an inconsistency between the affidavit and the EUO as to paragraphs three, four, five, six, and seven be both obvious and incontrovertible. He sat down and talked, and she explained. No less—and no more—does his testimony divulge, an exchange that can be cohered with his affidavit. To wit, in to these five paragraphs, the affidavit is not technically and perfectly inconsistent with Nafel's EUO.

Century, however, goes further. In particular, it asserts that the following statements are also inconsistent with Nafel's EUO testimony:

3) …Ms. Loup asked me several questions regarding the aforementioned properties and I provided her with truthful information in response to her questions to the best of my knowledge.

8) I did not knowingly or intentionally provide any false, misleading or inaccurate information in, or in connection with, the insurance application.

9) I dispute that any misrepresentation was made on the page of the application containing the "Loss History" section, as it appears that the "Loss History" section was not completed at all.

(Doc. 37-1 ¶¶ 3, 8-9.) According to Century, the above statements are directly contrary to Nafel's EUO testimony that he did not recall whether or not he told the insurance agent about his prior claims for vandalism at the Stern Property or the fire at the Donmoor Property:

Q: All right. So you also had a fire claim with another insurance company on your Donmoor property, correct?

A: Yeah.

Q: Okay. Did you report that to the insurance agent?

A: I can't remember either. And I can't say.[6]

***

_____

[6] Doc. 41-1 at 5.

Q:     You had just had a claim for vandalism in 2012. You didn't recall that when you did your application?

A:     I'm not sure I did. I'm not sure I did, you know, I did or I did not. I can't remember, I told that to her.

Q:     You told Dawn that you had had a vandalism claim?

A:     Whatever -- okay, I don't know if she have this information. I don't know what she have. But I can't remember. After three month and seven days, you have one year, I purchased this insurance.

Q:     Okay.

A:     I can't remember. It was a long time ago.[7]

(Doc. 41-1 at 2, 5, 7).[8]

In *McCulley v. JTM Indus. Inc.*,[9] the Fifth Circuit upheld the district court's decision to exclude the affidavit "after finding that it 'directly contradict[ed] his deposition in that he had a remarkable recall of past events that he did not possess during the taking of his deposition.'" No. 96-50701, 1997 WL 304208, at *2. While the *McCulley* plaintiff argued that his affidavit supplemented rather than contradicted his deposition testimony, the Fifth Circuit disagreed. *Id.* It found the plaintiff's "characterization of his affidavit as 'supplementary' [to be] optimistic when many of his answers purport to reflect knowledge of persons and events that, at the time of his deposition, he vigorously maintained he either did not know or did not recall." *Id.* at *2

---

[7] Doc. 41-1 at 7.

[8] *See also* Doc. 41-1 at 4, 8.

[9] Note that this is a post-1996 unpublished opinion and, as such, is not precedent under CTA5 Rule 47.5.4. The decision thus has three citations: 116 F.3d 1477 (5th Cir. 1997), 1997 U.S. App. LEXIS 43331, and 1997 WL 304208.

Similarly, the Western District of Louisiana disregarded statements in an affidavit which contradicted prior deposition testimony in *Adams Family Trust v. John Hancock Life Ins. Co.*, No. 09-1625, 2010 WL 3256381 (W.D. La. Aug. 16, 2010), *aff'd*, 424 F. App'x 377 (5th Cir. 2011). In the affidavit, the affiant stated she had not received a notice regarding annual premiums. *Id.* at *7. The court disregarded this statement because it directly contradicted her earlier testimony that she could not remember if she had received a notice or not. *Id.*

The Court agrees with Century that Nafel's statement that he "did not knowingly or intentionally provide any false, misleading or inaccurate information in, or in connection with, the insurance application" is inconsistent with Nafel's prior sworn testimony that he could not recall whether or not he provided the information about the claims to his agent. Therefore, based on *McCulley* and *Adams Family Trust*, this statement (¶8) is disregarded for purposes of this motion.

However, Nafel's declaration that he responded to Loup's questions truthfully and to the best of his knowledge is not inconsistent with his EUO testimony. Nafel's statements that he "did not know" were in response to questions during the EUO about whether or not he told the agent about claims and losses. In the parts of the EUO provided to the Court, Nafel was not asked whether he answered Loup's questions honestly. Indeed, it does not appear that he was asked whether or not Loup posed the questions to him at all. Therefore, because this statement is not inconsistent with Nafel's prior testimony, Century's objection should be overruled in this regard.

In conclusion, for purposes of this motion, this Court will DISREGARD paragraph number eight (8) of Nafel's affidavit. It will, however, NOT DISREGARD paragraph numbers three (3), four (4), five (5), six (6), seven (7), and nine (9).

## IV. The Motion for Summary Judgment

Century seeks a "declaratory judgment that the Policy was void *ab initio* as a result of Nafel's intentional and material misrepresentations upon which Century relied in issuing the Policy." (Doc. 31-2 at 1.) Century argues that it is entitled to summary judgment regarding rescission of the Policy based on two statutory sections: Sections 22:1311 and 22:1314. (Doc. 31-2 at 1.)

First, Century asserts that it is entitled to have the policy declared void *ab initio* pursuant to Section 22:1311(F) because Nafel made material misrepresentations on his application for insurance. Specifically, Century alleges that Nafel intentionally misrepresented or concealed material facts relating to (1) prior losses and claims; (2) prior cancellation of coverage; and (3) criminal activity on the properties. (*Id*.) According to Century, these facts were material because it would not have issued the Policy if Nafel had answered questions in the application truthfully. (*Id*.). Century further alleges that Nafel's misrepresentations were made with the intent to deceive the insurer in order to obtain insurance. (*Id*.) Second, and in the alternative, Century argues that it is entitled to rescission of the policy because Nafel violated Section 22:1314 by providing false information to Century. (*Id*.)

Under binding Louisiana law, the insurer bears the burden of proving that the insured misrepresented a material fact with the intent to deceive the insurer. *Darby v. Safeco Ins. Co. of Am.*, 545 So. 2d 1022, 1025–26 (La. 1989) (explicating Section 22:619A, setting forth the terms under which an insurer can avoid any liability insurance contract). Because it has the burden of proof at trial on the issue, Century must show that there is no genuine issue of material fact in

dispute in order for summary judgment in its favor to be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Section 22:1311(F)[10]

Century asserts that the policy is void *ab initio* because Nafel violated the "Concealment, fraud" provision encoded in Section 23:1311(F), which provides:

> **Concealment, fraud--** This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.[11]

To void a policy based on this provision, the insurer bears the burden of proving three elements: (1) the insured misrepresented or concealed a fact; (2) the misrepresented or concealed fact was

---

[10] Section 22:1311(F) contains Louisiana's Standard Fire Insurance Policy form. The terms found in Section 22:1311(F) are the statutory minimums for all fire policies in Louisiana. *See* La. Rev. Stat. § 22:1313; *see also Osbon v. Nat'l Union Fire Ins. Co.*, 632 So. 2d 1158, 1161 (La. 1994) ("[T]he provisions required by La. R.S. [22:1311] are mandatory and [] a fire insurance policy must be written either in conformity with the statute or in a manner which is *equivalent to or exceeds the coverage provided by statute*." (emphasis added)).

[11] The corresponding provision within the Century policy reads as follows:

> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> **1.** This Coverage Part;
> **2.** The Covered Property;
> **3.** Your interest in the Covered Property; or
> **4.** A claim under this Coverage Part.

(Doc. 1-2 at 76 (bold in original).)

material; and (3) the misrepresentation or concealment was made with the actual intent to deceive the insurer. *Roach v. Allstate Indem. Co.*, 2011 WL 4402575, at *2 (M.D. La. Sept. 20, 2011), *aff'd*, 476 F. App'x 778 (5th Cir. 2012) (citing *Cousin v. Page*, 372 So. 2d 1231, 1233 (La. 1979)); *see also Dean v. State Farm Mut. Auto Ins. Co.*, 975 So. 2d 126, 131 (La. Ct. App. 4th Cir. 2008) (holding that the same test is applicable to both misrepresentations made in the insurance application and those made after the issuance of a policy or after a loss).

A misrepresentation is material if knowledge of the truth would have caused the insurer either (1) to have declined to issue the policy or (2) to have issued the policy but at a higher premium rate. *Wohlman v. Paul Revere Life Ins. Co.*, 980 F.2d 283, 286 (5th Cir. 1992); *see also, e.g.*, *Dean*, 975 So. 2d at 133; *U.S. Life Ins. Co. in City of New York v. Watts*, 199 F. Supp. 2d 492, 494 (E.D. La. 2001). "The insurer must *unequivocally* show that had it had actual knowledge of the misrepresented facts, it would not have issued the policy." *Rowe v. Metro. Life Ins. Co.*, 2001 WL 685940, at *2 (E.D. La. June 18, 2001) (emphasis added) (citing *Wohlman*, 980 F.2d at 286).

Intent to deceive is rarely appropriate for summary judgment because it can often only be proven with circumstantial evidence. *See Guillory v. Domtar Indus. Inc. v. John Deere Co.*, 95 F.3d 1320, 1326 (5th Cir. 1996). However, "the presence of an intent issue does not preclude summary judgment: the case must be evaluated like any other to determine whether a genuine issue of material fact exists." *Id.* And when state of mind is at issue,

> The court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party. Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (alterations in original) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

Under Louisiana law, "[s]trict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent." *Johnson v. Occidental Life Ins. Co. of Cal.,* 368 So. 2d 1032, 1036 (La. 1979) (internal citations omitted). Instead, the Louisiana Supreme Court has explained:

> Intent to deceive must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality.

*Darby*, 545 So. 2d at 1026 (quoting *Cousin v. Page*, 372 So. 2d 1231, 1233 (La. 1979)) (internal quotations omitted); s*ee also Breaux v. Bene*, 664 So. 2d 1377, 1380 (La. Ct. App. 1st Cir. 1995) (using surrounding circumstances to determine existence of intent to deceive on summary judgment); *Watson v. United of Omaha Life Ins. Co.*, 735 F. Supp. 684, 685-86 (M.D. La. 1990) (same).

Century argues that it is entitled to have the policy declared void *ab initio* because Nafel made misrepresentations on his application as to: (1) prior losses or claims in the five years preceding the date of the insurance application; (2) prior cancellations of insurance coverage in the three years preceding the date of the insurance application; and (3) the history of any criminal activity on the properties during the three years preceding the date of the insurance application. (Doc. 31-2 at 2.) Century contends that these misrepresentations were material because it would not have issued the policy to Nafel had he responded truthfully on the application. (*Id.* at 16-17.) Century further declares that because of the number of misrepresentations made, the nature of the misrepresentations, and the circumstances surrounding the application process, "the only

reasonable assumption is that Nafel recognized the materiality of the misrepresentations and intended to deceive the insurer." (*Id.* at 20.)

### 1. Effect of the Agent Filling Out the Application

Nafel disputes that he actually, or intentionally, made any misrepresentations in the application. (Doc. 37 at 12.) Throughout his opposition, Nafel stresses that that the application was filled out by the insurance agent and not him. (*Id*. at 13.) Therefore, Nafel asserts that "if there were any errors or inaccurate information provided in the insurance application for the Century policy, this only occurred due to an error by the insurance agent, Dawn Loup, or due to a miscommunication between he [*sic*] and Dawn Loup." (*Id*. at 14.) This contention bears on two of the elements here: (1) misrepresentation made by the insured, and (2) intent to deceive.

Under well-established Louisiana law, if the insurance agent fills out the application for the prospective insured and

> by reason of mistake, fraud, omission, or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer, but are not binding upon the insured, *provided he (the insured) is justifiably ignorant thereof, has no actual or implied knowledge thereof, and has been guilty of no bad faith or fraud*.

*Harris v. Guar. Income Life Ins. Co.*, 75 So. 2d 227, 229 (1954) (emphasis in original); *see also Americas Ins. Co. v. Chatman*, No. 2013 CA 0954, 2013 WL 6858314 (La. Ct. App. 1st Cir. Dec. 27, 2013), *writ denied*, 141 So. 3d 808 (La. 2014); *Foster v. United of Omaha Life Ins. Co.*, No 08-1170, 2010 WL 3834047, at *12 (W.D. La. Sept. 24, 2010) *aff'd*, 442 F. App'x 922 (5th Cir. 2011). An insurance applicant is entitled to "rely upon and sign an application as completed by the agent and may rely upon the agent's expertise in interpreting the nature of the information sought by the company he represents." *Bridges*, 36 So. 3d at 1147; *see also Toups v. Equitable Life Assurance*, 657 So. 2d 142 (La. Ct. App. 3d Cir. 995).

Nafel cites in *State Farm Mut. Auto. Ins. Co. v. Bridges*, 36 So. 3d 1142 (La. Ct. App. 2d Cir. 2010), for what he asserts is a "virtually identical situation" to the one here. In *Bridges*, the insurer sought to have an insurance policy declared void because the insured allegedly made a false statement in the insurance application by not disclosing his daughter as a resident of his household when it asked for a list of all residents over the age of 14. *Id*. at 1145. At the time of the application, the insured's daughter was 16 years old and lived in the household. *Id*. at 1147. The application was filled out by the insurance agent who knew the insured, his background, and the ages of his children. *Id*. The agent had the insured sign the application via an electronic signature pad without presenting it to the insured for review. *Id*. In a sworn statement, the insured testified that he "did not recall having a conversation with anybody at [the insurance company] regarding whether [his daughter] should be included in the policy." *Id*.

Based on this evidence, the *Bridges* court held that the insurance company failed to satisfy its burden of proof with regards to a material misrepresentation and the intent to deceive. *Id*. at 1149. In its reasoning, the court stressed that the insurer completed the application and the insured did not read it. *Id*. The court found that the insurer could not prove that the insured made a false statement because the insured did not review the application before signing it. *Id*. at 1147. Additionally, the court questioned how the insured "could have intended to deceive [the insurer] by withholding information, when he was unaware of what was in the form." *Id*. at 1148.

Century contends that the *Bridges* case is distinguishable because "Nafel testified that Loup explained the forms and questions to him and he then executed the paper applications and forms." (Doc. 41 at 8.) Additionally, Century points to the affidavit of Loup in which she stated that she "explained and reviewed the completed applications and forms with Nafel to confirm their accuracy prior to having Nafel execute these forms." (*Id*.).

Century is correct that Nafel testified that Loup explained the application.[12] But viewing the EUO testimony in the light most favorable to Nafel, this does not establish that he reviewed or read the application prior to signing it.

> Q:     All right. So this is the application form that you filled out when you were doing the application for insurance.
>
> A:     Actually, she's [Dawn Loup] the one that did it.
>
> Q:     And you signed the bottom; is that correct?
>
> A:     I signed the bottom, yeah, and she already -- when I agree on it, she called me back. I went over there and we signed the paper and she talked to me about it, and I gave her the check. I think it's over -- you have the paper, how much I paid her?
>
> Q:     No, I don't have that. Can you look at that one, also? This is a --
>
> A:     I paid $3,000 for that thing.
>
> Q:     That's a five-page application. Did you fill that out or did you sit down and talk with Dawn and she filled it out?
>
> A:     She explain [sic] it to me and I -- she did it, you know, but I signed my name here.

(Doc. 31-6 at 6-7.)

---

[12] Specifically:

> Q:     That's a five-page application. Did you fill that out or did you sit down and talk with Dawn and she filled it out?
>
> A:     She *explain* [sic] *it to me* and I – she did it, you know, but I signed my name here.

(Doc. 31-6 at 6-7 (emphasis added).)

A recent case out of the Eastern District, *Shepherd v. Geovera Specialty Ins. Servs., Inc.*, No. 14-862, 2015 WL 1012994 (E.D. La. Mar. 5, 2015), also supports Nafel's position. In *Shepherd*, the insurer moved for summary judgment on the grounds that the policy was void due to material misrepresentations made by the insured on the insurance application. In opposition, the insured argued that because the application was filled out by his agent, the insurer "could not prove [the insured] misrepresented material facts or made false statements with the intent to deceive." *Id.* at *3. The insured claimed that he did not make the false statements and that there was no evidence that he knew of any false statements made by the agent. *Id.* Judge Milazzo denied the insurer's motion, stating:

> [v]iewing the evidence in the light most favorable to Shepherd, the Court finds that there is a genuine dispute of material fact as to whether the misrepresentations were made by [the insured] and whether he intended to deceive [the insurer]. Although there are some situations in which a Court may infer intent to deceive, in this case there are factual disputes that must be determined by the trier of fact.

*Id.* at *4. In a footnote, Judge Milazzo gave an example of one of the factual disputes from the case:

> [The insured's] affidavit avers that he did not complete or sign the application, that he was not made aware that [the insurer's] underwriting guidelines prevented it from placing a policy of insurance under the circumstances at issue, and that there was no unrepaired damage to his residence. To rule in [the insured's] favor on summary judgment would require a credibility determination, a determination better left to the trier of fact

*Id.* at *4 n.24.

Like the insured in *Shepherd*, Nafel has asserted that any false statements in the application were due to the agent's error or a miscommunication between him and the agent. Additionally, Nafel contends that Loup filled out the application, and he relied on her to do so accurately, which, under Louisiana law, he is entitled to do. Furthermore, Nafel has asserted that

he "had no reason to believe these forms contained any false, misleading or inaccurate information."

Because Century solely relies on Loup's affidavit to support the notion that it was Nafel who made misrepresentations on the application, we have a battle of the affidavits, which involves a credibility determination. There is an issue of fact as to whether it was Nafel or Loup (by negligence, error, or omission) who made misrepresentations on the application. This necessary raises an issue of fact as to the intent element because if it was Loup who made the misrepresentations, then Nafel cannot have had the requisite intent to deceive.

Therefore, summary judgment must be denied based on this alone. However, there are additional reasons the motion should be denied. For the sake of clarity and comprehensiveness, this Court will review each such ground.

### 2. Misrepresentations in the Application

#### a. Prior Claims or Losses in the Preceding Five Years

##### i. Loss History Section of the Application

Century contends that Nafel failed to provide any information regarding prior claims or losses on any of the properties in the preceding five years. (Doc. 31-2 at 12.) To support its position, Century first points to the application's Loss History section. (*Id*.) This section requests information from the prior five years regarding: (1) all insurance claims filed; (2) all losses regardless of fault and whether or not the applicant was insured at the time of the loss; and (3) any occurrences which could give rise to a claim. (Doc. 31-4 at 2). Next to the information request prompt is a box stating "CHK HERE IF NONE." (*Id*.) On Nafel's application, the Loss History section is completely blank. (*Id*.)

Nafel counters that the Loss History section of the application appears to have not been completed by Loup at all. (Doc. 37 at 9.) Specifically, Nafel notes that the "CHK HERE IF NONE" box which would indicate no prior claims is not checked.[13] (*Id*.) According to Nafel, this section does not contain any misrepresentations but, rather, is an incomplete form. (*Id*.) Nafel further asserts that Century's agent – Cheryl Chenevert – had "actual or constructive knowledge that the 'Loss History' section was not filled out at all" because she reviewed the application before binding coverage for Century. (*Id*.)

In reply, Century acknowledges that the Loss History section box indicating no prior claims is unchecked. (Doc. 41 at 13.) However, Century contends that Loup's affidavit shows that she questioned Nafel about his loss history, and he "represented to her that he had no losses or claims during the past 5 years." (*Id*.) It was based on this representation, Century asserts, that no prior losses were listed in the Loss History section. (*Id*.)

Despite Loup's affidavit, a reasonable juror could find that this section was not completed. Therefore, there is a genuine issue of material fact as to whether the Loss History section constitutes a misrepresentation.

### ii.    Acord 37-- Statement of No Loss

Century also asserts that Nafel made a misrepresentation of fact in the Acord 37 -- Statement of No Loss form, which provides:

> I certify that there have been no losses, accidents or circumstances that might give rise to a claim under the insurance policy whose number is shown from 12:01 AM on 4-19-08 to 4-19-13 12:00 PM.

---

[13] Note that on the 2010 Policy, the box is checked. (Doc. 39-2, p. 12).

(Doc. 31-2 at 12.) The signatures of Nafel and Loup appear below the statement. (*Id.*)

According to Century, this statement provides a certification that "no prior claims existed during the 5 years preceding the application." (*Id.*) Century contends that Nafel falsely certified the Statement of No Loss because he was aware of two prior claims relating to two of the three properties made during the requisite time period.[14] (*Id.* at 12-13.)

In opposition, Nafel asserts that the Statement of No Loss is merely a certification that there have been no losses, accidents or circumstances that could lead to a claim under the new policy for which he was applying. (Doc. 37 at 10.) Nafel contends that the certification does not cover any losses or claims that were brought under previous policies. (*Id.*) Nafel further contends that the Donmoor fire and the Stern vandalism occurrences "resulted in claims made under ***prior*** policies, and not ***this*** policy." (*Id.*)

In its own opposition, Underwriters asserts an additional argument that the Statement of No Loss is ambiguous as to what information it is seeking. (Doc. 36 at 7.) Pointing to the phrase "that may give rise to claims," Underwriters contends that "already-reported claims would not 'give rise to claims' in the future." Therefore, according to Underwriters, "it is entirely reasonable to conclude that such claims are beyond the scope of the question in the Application." (*Id.* at 8.)

Century responds that the Acord 37 form is typically "used when a policy issued by an agency has been cancelled, or lapsed, due to non-payment of a premium and the former insured desires to reinstate the cancelled policy without any lapse in coverage by paying the delinquent

---

[14] The first prior loss occurred in 2011 or 2012 when a fire occurred at the Donmoor property. (Doc. 1-11 at 3.) Nafel made a claim with his previous insurer and received payment under that policy of approximately $155,000. (Doc. 1-11 at 4.) The second prior loss occurred at the Stern Property in 2012. (Doc. 1-11 at 7.) This loss involved vandalism of the building and theft of some air conditioning units. (*Id.*). Century contends that Nafel made a claim with his previous insurer and received payment under that policy of approximately $14,000. (Doc. 31-2 at 13.)

premium." (Doc. 41 at 7.) Century asserts that "[b]y signing this form, the former insured certifies that they are not aware of any losses, or circumstances that might give rise to a claim under the policy, *during the period coverage had lapsed*." (*Id.* (emphasis added)). According to Century, Nafel was required to sign the form because he "advised his agent Dawn Loup that he currently had forced [sic] placed insurance."[15] (*Id.*) Century points to Loup's affidavit where she attests that, prior to Nafel's execution of the form, she "reviewed the form Acord 37 -- Statement of No Loss with him to confirm that he was representing to me that he had no prior losses or claims on these three (3) properties during the past five (5) years." (Doc. 1-4 ¶ 17 at 3.)

Century did not specifically respond to the ambiguity argument made by Underwriters. Instead, Century relies on the above statement from Loup's affidavit and the EUO in which Nafel stated that Loup explained the application to him before he signed it. (Doc. 39 at 7-8.)

The Court finds that Nafel and Underwriters have established that there is a genuine issue of material fact as to whether or not the information on the Statement of No Loss is a misrepresentation. Century admitted in its reply memorandum that the Acord 37 is used to certify that no losses that might give rise to a claim under the policy that occurred "during the period coverage had lapsed." Both the Donmoor and Stern incidents appear to have taken place when Nafel had coverage under a previous policy because he made claims and received payments from the insurer(s). Therefore, Century has only alleged that Nafel was aware of past incidents that gave rise to claims under *previous* policies. A reasonable juror could conclude that already reported and paid claims are not instances "that might give rise to claims under" the new

---

[15] "Force-placed insurance is the insurance that a lien holder places on a property to provide coverage in the event the borrower allows the coverage to lapse or when the borrower's coverage actually lapses. It ensures that the property remains insured, protecting both the property owner and the lien holder. Costs of the insurance are typically paid up-front by the lien holder, but then added to the balance of the lien." *Baxter v. PNC Bank Nat'l Ass'n*, 541 F. App'x 395, 397 n.1 (5th Cir. 2013).

policy. Therefore, Century has failed to meet its burden of proving that Nafel made a misrepresentation as to prior losses on Acord 37.

### b. Prior Cancellations in the Preceding Three Years

Century next alleges that Nafel made a material misrepresentation regarding prior cancellations of insurance coverage in the three years prior to the application date. (Doc. 31-2 at 13.) Question 6 on the first page of the application asks if the insured has had "any policy or coverage declined, cancelled or non-renewed during the prior 3 years?" (Doc. 31-4 at 1.)The answer to this question is indicated by a check in the box marked "NO." (*Id*.).

To support this allegation, Century attaches a Notice of Cancellation (Doc. 31-5) addressed to Bassam Nafel, which Century contends that it discovered that during its investigation of the fire loss claim. (Doc. 31-2 at 14.) Century asserts that Universal Specialty Underwriters, Inc., issued the notice of cancellation for nonpayment to Nafel on July 23, 2010. (*Id*.) Century further asserts that the notice of cancellation was related to a previous insurance policy which provided coverage on the Donmoor property, one of the three properties (and not the only property) insured under the Century policy. (*Id*.)

In his opposition, Nafel sets forth two arguments to counter that his answer to question 6 was a misrepresentation. (Doc. 37 at 16.) First, Nafel points out that the notice is dated "approximately 2 years and 8 months" before he filled out the application. (*Id*.) This argument is unpersuasive.[16] Question 6 on the application clearly states "during the prior 3 years." The notice was issued on July 23, 2010. The application was executed on March 28, 2013.

---

[16] More than once Nafel and Underwriters attempt to defeat summary judgment with the argument that it was "*almost*" outside the three year period. To use the words of Justice Scalia, this is "jiggery pokery." *King v. Burwell*, 135 S.Ct. 2480, 2500 (2015) (Scalia, J. dissenting).

Second, Nafel argues that the notice of cancellation is not authenticated, and Century has not "provid[ed] any further detail as to why it was issued or the circumstances regarding Nafel's insurance on the Donmoor property for that year." (*Id*.) This argument also fails because Century subsequently authenticated the notice through the affidavit of Sandra Nance ("Nance"), a Property Product Manager in the Underwriting Department of Century Surety Company. (Doc. 41-2 ¶ 2.)

In its own opposition, Underwriters asserts that the policy cancelled in 2010 was issued by Century, and therefore, Century had prior knowledge of the cancellation. (Doc. 36 at 14.) Underwriters contends that Section 22:1314(B)[17] precludes Century from raising misrepresentation of the cancellation as a defense because it had prior knowledge of the cancellation. (*Id*.)

Century responds that it had no knowledge of the cancellation prior to its investigation because the names of the insured were not consistent on the applications or policies. (Doc. 39 at 8.) On the 2010 application, policy, and notice of cancellation, the insured's name was listed as "Bassam Nafel." (Doc. 39-2 at 10, 15-16.) The 2010 quote from Century listed the insured's name as "Nafen Bassel." (Doc. 39-2 at 4-9.) On the 2013 application, request for quote, and policy, the insured's name was listed as "Nafel Bassam." (Docs. 31-4, 1-5, 1-2.) Century points to the affidavit of Nance who attests that Century had no knowledge of the 2010 policy's

_____

[17] La. Rev. Stat. § 22:1314(B) provides:

> Notwithstanding the provisions of Subsection A of this Section, such a breach shall not afford a defense to a suit on the policy if the facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured.

issuance or cancellation when the 2013 policy was issued or when the fire loss occurred on July 11, 2013. (Doc. 39-2 ¶¶ 11-13.)

Century has successfully shown that there was a misrepresentation regarding Nafel's prior cancellation. However, because there is an issue of fact regarding whether Nafel or Loup made the misrepresentation, summary judgment must still be denied.

### c. Criminal Activity in the Preceding Three Years

Finally, Century alleges that Nafel made a misrepresentation regarding the history of criminal activity occurring on the three properties in the three years prior to the application date. (Doc. 31-2 at 13.) In the Acord Commercial General Liability section of the application, there is a series of twenty yes or no questions seeking "General Information." (Doc. 31-4 at 6.) Question 18 of this section asks, "Have any crimes occurred or been attempted on your premises within the last three years?" (*Id*.) On Nafel's application, the answer to this question is indicated by a check in the box marked "NO." (*Id*.)

Century contends that its investigation into the 2013 fire loss claim led to the discovery that this representation was false. (Doc. 31-2 at 14.) During his EUO, Nafel testified that the Stern Property had been the subject of vandalism and theft in 2012. (Doc. 31-2, p. 14). Nafel filed a police report after this vandalism and theft event. (Doc. 1-11 at 4.) A certified copy of the police report indicates that Nafel reported that a theft and criminal damage to the Stern Property had occurred between September 1 and September 9 of 2012. (Doc. 31-7 at 1-2.) Specifically, Nafel reported that two air conditioning units had been stolen from the premises and that the property had suffered approximately $20,000 of structural damage. (*Id*. at 5-6.) Upon further investigation, Century also discovered that Nafel had filed another police report relating to damage to the Stern Property on October 13, 2010. (Doc. 31-2 at 15.) The certified copy of this

police report indicates that Nafel reported criminal damage of two air conditioning units and criminal trespass on the Stern Property. (Doc. 31-8 at 6.)

Nafel's main argument in response is that the incidents occurring at the Stern Property were not required to be reported on the application. (Doc. 37.) Underwriters make the same claim. (Doc. 36.) As both Nafel and Underwriters take quite a few different routes to get to that argument, this Court will address each in turn.

### i. Question's Location

First, Nafel asserts that this question is found in the Commercial General Liability section of the application and does not apply to the issue in this case. (Doc. 37 at 17.) Specifically, Nafel argues that this section of the application is pertinent only to the Commercial General Liability policy issued to Nafel. (*Id.*) Nafel contends that the Commercial General Liability policy is not at issue here because it only "covers liability of the insured (Nafel) himself, not certain pieces of property like the Commercial Property policy does." (*Id.*) Underwriters echo this theory. (Doc. 36 at 14-15.) Century does not address this first argument in its reply to Nafel (Doc. 41.) And in its reply to Underwriters, Century's only counter-argument is that the location of the question is irrelevant. (Doc. 39 at 10.)

Despite this underwhelming response, this Court nonetheless agrees with Century that the location of the question is irrelevant. Under the pertinent provision of Section 22:1311(F), a misrepresentation or concealment of "any material fact or circumstance concerning this insurance *or the subject thereof*" will void the entire policy. The two incidents occurred at the Stern Property and, therefore, plainly concern one of the subjects of the Commercial Property policy. Furthermore, Century issued a single "Commercial Lines Policy." Although there are

separate "Coverage Parts" under the policy, it is still one single policy, mere sophistry to argue otherwise.

## ii.    Question's Two Purported Ambiguities

Next, Nafel and Underwriters contends that the criminal history question is ambiguous because the application does not define "crime." Nafel argues that "Century cannot reasonably expect its prospective insureds to delineate what is, or is not, a 'crime' when providing information for an insurance policy." (Doc. 36 at 14-15; Doc. 37 at 17.) Century responds that Nafel recognized the vandalism and theft incidences as "crimes" by reporting them to the police. (Doc. 39 at 10.)

Century has the better argument here. Under the standard rules of contract interpretation, if the language is clear and unambiguous, it is accorded its natural meaning. *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984). It's hard to swallow the argument that Nafel did not consider the incidents crimes when he reported them to the police himself.

Nafel also argues that the question is ambiguous because it does not specify the "premises" to which it refers. (Doc. 37 at 17.) Nafel contends that because the Commercial General Liability section does not contain a "premises" section, the question is vague. According to Nafel, Century cannot argue that "premises" means the properties insured under the Commercial Property policy because "this question pertains to the 'Commercial General Liability' policy." (*Id.*)

Century does not specifically address this argument. However, in its original memorandum in support of its Motion for Summary Judgment, Century defined the insurance

application to include: (1) the Commercial Insurance Application – Acord 125; (2) the Property Section – Acord 140; and (3) the Commercial General Liability Section – Acord 126. (Doc. 31-2 at 1 n.1.)

The documents themselves support Century's definition of the application. The Acord 125 appears to be the first part of all Commercial Insurance applications using Acord forms. It is a two page document containing the "Applicant Information Section." (Doc. 31-3 at 18-19.) This document indicates that the Property section and the Commercial General Liability section are attached.



The "Premises Information" box lists the three properties to be insured. (*Id.*). Below the Premises Information is a box requesting the "Nature of Business/Description of Operations by Premises," which contains the phrase "4 Plex – (3)".

| PREMISES INFORMATION | | | | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | PART OC |
|---|---|---|---|---|---|---|---|---|---|
| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | | | | | | | |
| 1 | 1 | 1135 MONET DRIVE BATON ROUGE LA 70807 | | ✓ INSIDE ☐ OUTSIDE | OWNER TENANT | 1985 | | | |
| 2 | 2 | 1140 N DONMORE BATON ROUGE,LA. 70806 | | | | 1985 | | | |
| 3 | 3 | 8282 STERN AVE BATON ROUGE LA. 70820 | | ✓ INSIDE ☐ OUTSIDE | OWNER TENANT | 1985 | | | |

NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

4 PLEX - (3)

The Acord 126 is also two pages and contains the "Commercial General Liability Section." (*Id.* at 20-21.) The second page of the Acord 126 indicates that it is to be "Attach[ed] to Applicant Information Section" otherwise known as Acord 125. (*Id.*)[18] Critically, Nafel has not argued that the Acord 126 was not attached to the Applicant Information Section.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY:SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, HI, NE, OH, OK, OR or VT; in DC, LA, ME, TN and VA, insurance benefits may also be denied).
ACORD 126 (2004/03)                        ATTACH TO APPLICANT INFORMATION SECTION

The Acord 126 contains a "Schedule of Hazards" portion which lists 3 "hazards" identified by location number 1, 2, and 3. (*Id.* at 20.) Each location is classified as "4-Plex Rental." (*Id.*)

| LOCATION # | CLASSIFICATION | CLASS CODE | PREMIUM BASIS | EXPOSURE | TERR | RATE PREM/OPS | RATE PRODUCTS | PREMIUM PREM/OPS | PREMIUM PRODUCTS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 4-PLEX RENTAL | 0198 | | | | | | | |
| 2 | 4-PLEX RENTAL | 0198 | | | | | | | |
| 3 | 4-PLEX RENTAL | 0198 | | | | | | | |

Note that the location numbers under the Schedule of Hazards appear to correspond to the location numbers from the Premises Information of the Applicant Information Section.

It is clear that these forms are meant to be and were used together. Standing alone, the Acord 126 (Commercial General Liability section) does not contain enough information to be considered its own separate application. Nafel has not asserted that the Acord 126 was not attached to the Acord 125. Therefore, the term "premises" is not ambiguous merely because the Acord 126 does not list the addresses of the properties to be insured.

---

[18] Acord 140 is the Property Section of the application and also contains a statement that it is to be "Attach[ed] to Applicant Information Section." (Doc. 31-3 at 22-23.)

### iii.     October 13, 2010, Incident

Finally, as to the October 13, 2010 incident, Nafel first asserts that he did not own the property at the time of the incident because he didn't "purchase the property until October 19, 2010 which was six days after the incident report." (Doc. 37 at 20.) In support of this statement, Nafel attached the act of sale for the Stern Property. (Doc. 37-4.) Next, Nafel contends that the incident report does not clearly show that a crime was committed because nothing was removed or stolen and the damage was minor. (Doc. 37 at 20.) Finally, Nafel notes that this event "took place almost three years before the application for Century insurance." (*Id.*) In reply, Century notes that according to the act of cash sale (Doc. 37-4), the sale was completed between the parties on August 31, 2010. The documents were not filed into the "mortgage records" until October 19, 2010. (*Id.*)

Nafel's arguments regarding the October 2010 incident should fail for two reasons. First, Nafel was clearly the owner of the property at the time of the incident. Ownership of the Stern Property was transferred to Nafel on August 31, 2010. *See* LA. CIV. CODE ANN. art. 517 (ownership of an immovable is transferred between the parties "by a contract between the owner and the transferee that purports to transfer the ownership of the immovable."). Nafel identified himself to the investigating officer as the owner of the building when he reported the October 13, 2010 event. (Doc. 31-8 at 3, 6.) Second, the incident report indicates that the crimes of simple criminal damage to property and criminal trespass occurred at the Stern Property. These two offenses were noted to be "completed" on the report. Finally, the time period requested in the question is for the "preceding three years." This incident occurred within that time period and should have been provided; the contract plainly perused allows for no other reasonable interpretation.

Thus, Century has shown that the application contains a misrepresentation regarding the history of criminal activity occurring on the three properties in the three years prior to the application date. However, because there remains an issue of fact regarding whether Nafel or Loup made the misrepresentation, summary judgment must still be denied.

### 3. Materiality

Century claims that the misrepresentations in the application were material because it would not have issued the policy had Nafel provided truthful responses in the application and statement of no loss. (Doc, 31-2 at 17.) To support this claim, Century points to Nance's affidavit. (Doc. 31-9.) Nance stated that Century would not have issued the policy "[i]f Nafel had provided truthful information on his application regarding prior cancellation of a policy for non-payment of premium, history of criminal activity and damage on the property, and prior claim history."[19] (*Id*. ¶ 26.)

### a. General Argument Against Materiality of the Alleged Misrepresentations

Underwriters argues against the materiality of any alleged misrepresentations because Century's allegations and affidavits "do not establish that Century would not have issued the policy." Specifically, Underwriters contends that Century has seemingly "admit[ed] that it would have still issued the policy, just at a higher premium." (Doc. 36 at 16.) Underwriters claims that because Nafel testified that he would have paid the higher premium, any misrepresentations "cannot be considered material because Century would be in the same

_____

[19] In two other paragraphs, Nance also stated that Century would not have issued the policy if Nafel had provided truthful information (1) on the application regarding prior losses or claims, (Doc. 31-9 ¶ 24), and (2) in the Statement of No Loss, (*Id.* ¶ 25). Because Century has failed to satisfy its burden of proof as to whether or not these documents contained a misrepresentation, a discussion of materiality is unnecessary.

position it is currently in as the insurer of the Stern Avenue Property at the time of the fire." (*Id.* at 17.)

This argument is unavailing. The test for materiality requires only that the insurer would have either not issued a policy or would have charged a higher premium if it had known the truth. *Wohlman*, 980 F.2d at 286. It is of no import if the insured would have agreed to pay a higher premium.

Underwriters also argues that the affidavit testimony only raises the "possibility" that Century may have acted differently. (Doc. 36 at 17.) Underwriters contends that because the affidavits do not conclusively prove that Century would have acted differently, Century has not met its burden of proving the element of materiality.

Century has not presented sufficient evidence to support summary judgment on the issue of materiality. The only evidence of whether Century would have declined to issue the policy is the affidavit of Sandra Nance. Although Nance "is familiar with the underwriting requirements utilized in issuing quotes and/or policies," her statements are not supported by any evidence in the record. As ably explained by our brother in the Eastern District:

> It is well-settled law that affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to sustain a motion for summary judgment. *Stradley v. Lafourche Commuc'ns, Inc.,* 869 F. Supp 442, 445 (E.D. La. 1994) (Clement, J.) ("[s]elf-serving affidavits ... have been held insufficient to sustain motions for summary judgment."); *State Farm Mut. Auto. Ins. Co. v. Philly Family Practice, Inc.,* 252 F. Supp. 2d 718, 726 (E.D. Pa. 2007) ("[S]elf-serving affidavit [ ] is an unreliable foundation to support his motion for summary judgment.") (citing *I.V. Servs. of Am., Inc. v. Trs. Of Am. Consulting,* 136 F.3d 114, 122 (2d Cir. 1998) ("[A] finder of fact need not have believed [the] self-serving affidavit.")); *Strum v. Ross,* 11 F. Supp. 2d 942, 946 (S.D. Tex. 1998) (the court denied summary judgment because the defendants "erroneously relie[d] exclusively on ... self-serving affidavits."); *Welch v. Liberty Machine Works, Inc.,* 23 F.3d 1430 (8th Cir. 1994) (overruled on other grounds) (holding that a self-serving affidavit "alone is insufficient" at summary judgment.).

*S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 WL 579439, at *2-3 (E.D. La. Feb. 22, 2012).

In cases similar to the one before this court, materiality has been proven by the insurer through the submission of both affidavits and the "underwriting guidelines" of the insurer. *See Pryor v. State Farm Mut. Auto. Ins. Co.*, 663 So. 2d 112, 115 (La. Ct. App. 3d Cir. 1995); *James v. Allstate Life Ins. Co.*, No. 96-3324, 1997 WL 618838, at *4 (E.D. La. Oct 3, 1997); *Rowe*, 2001 WL 685940, at *3 ("After review of the guidelines and affidavits submitted, the Court concludes that MetLife's guidelines left no discretion on the part of the underwriter as to whether the policy would have been issued.").

Because "[t]he insurer must *unequivocally* show that had it had actual knowledge of the misrepresented facts, it would not have issued the policy," *Rowe*, 2001 WL 685940, at *2 (emphasis added)—and because it has not done so—Century has failed to meet its burden of proving materiality of the misrepresentations by only presenting the affidavit of its employee. Rule 56 demanded more before summary judgment could issue.

### 4. Intent to Deceive

Under Louisiana law, intent to deceive may be shown by circumstantial evidence. However, the insurer must show that the surrounding circumstances indicate: (1) the insured's knowledge of the falsity of the representations made in the application and (2) his recognition of the materiality of his misrepresentations or from circumstances which create a reasonable assumption that the insured recognized the materiality.

Century argues that Nafel had personal knowledge of the prior claims, prior cancellation of insurance, and the prior criminal activity. Century further argues that the circumstances create

a reasonable assumption that Nafel recognized the materiality because of (1) the number of times Nafel misrepresented the facts; (2) the nature of the misrepresentations; (3) the involvement of his own agent in attempting to confirm the accuracy of his representations; and (4) Nafel's knowledge of the falsity of his statements during the application process.

However, there is an issue of fact regarding whether Nafel or Loup made the misrepresentation. Therefore, there is necessarily an issue of fact as to the intent to deceive element because if the misrepresentation was made by Loup, then Nafel cannot have had the intent to deceive the insurer. Who between the two—Loup or Nafel—truly deceived Century, if it was even truthfully and willfully tricked, remains unknown, regardless of what reasonable deductions may be made by Plaintiff or Defendant. Accordingly, Century has failed to meet its burden of proof as to the intent element.

### B. Section 22:1314

In the alternative, Century asserts that it is entitled to rescission of the policy because Nafel breached a representation in violation of Section 22:1314(A), which provides:

> No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty, or condition contained in such policy or in the application therefor. Such breach shall not allow the insurer to avoid liability unless such breach: (1) exists at the time of the loss, and be such a breach as would increase either the moral or physical hazard under the policy; or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business

LA. REV. STAT. ANN. § 22:1314. "A representation is an oral or written statement by the insured made prior to the completion of the insurance contract giving information as to some fact or state of facts with respect to the subject of the insurance, which is intended or necessary for the

purpose of enabling the insurer to determine whether it will accept the risk, and at what premium." *Benton Casing Serv., Inc. v. Avemco Ins. Co.*, 379 So. 2d 225, 226 (La. 1979).

Logically, Century cites the same representations (prior loss/claims, prior cancellation, and criminal history) in support of its argument here. (Doc. 31-2 at 21-22.) By its own implicit admission, then, if some doubt still clings to those representations, its claims under Section 22:1314 must fail as surely as its asseverations under Section 22:1311. Indeed, statutory logic dictates such symmetry, as the "general rule" underlying both sections has been that a defendant, in relying on "false or fraudulent statements or representations on the part of the insured in procuring the insurance [coverage]," has long been that the same "defendant also has the burden of proving that the misrepresentations were made by insured with knowledge of their falsity, and with a fraudulent intent to mislead or deceive, and that they were material to the risk, and were relied on by defendant and acted as an inducement to it to issue the policy." *Carroll v. Am. Employers Ins. Co.*, 241 So. 2d 538, 540 (La. Ct. App. 2d Cir. 1970) (quoting *Welch v. New York Underwriters Ins. Co.,* 145 So. 2d 376, 379 (La. Ct. App. 3d Cir. 1962)).

Because this Court has found that there remains a question of fact as to whether Nafel or Loup made the representations on the insurance application, *see supra* Part IV.A, summary judgment must be deemed inappropriate on the basis of Section 22:1314(A) as well.

## V.    Conclusion

For all of the reasons given herein, the Court finds that summary judgment is inappropriate and Century's motion is therefore denied.

Signed in Baton Rouge, Louisiana, on <u>August 24, 2015</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**