UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CENTURY SURETY COMPANY,

Plaintiff,

No. 3:14-CV-00101-JWD-EWD

VERSUS

BASSAM NAFEL *ET AL.*,

Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SANCTIONS

## I.   INTRODUCTION

Before the Court is Century Surety Company's Motion for Summary Judgment ("MSJ"), (Doc. 86), and Century Surety Company's Motion for Sanctions ("Sanctions Motion"), (Doc. 84), both filed by Century Surety Company ("Plaintiff" or "Century"). Certain Underwriters at Lloyd's London ("Underwriters"), the intervenor plaintiff, has opposed the MSJ with Certain Underwriters at Lloyd's Londons' Opposition to Century Surety Company's Motion for Summary Judgment ("MSJ Opposition"), (Doc. 90), to which Plaintiff has responded with Century's Reply to Underwriters' Opposition to its Motion for Summary Judgment ("MSJ Reply"), (Doc. 92). Underwriters, in turn, has contested the Sanctions Motion with Certain

Underwriters at Lloyd's Londons' Response to Century Surety Company's Motion for Sanctions ("Sanctions Opposition"), (Doc. 89), to which Plaintiff has retorted with Century Surety Company's Reply to Certain Underwriters At Lloyd's, London's Response to Motion for Sanctions, ("Sanctions Reply"), (Doc. 93). Having considered the relevant motions, related briefing, and applicable law, this Court DENIES the MSJ and GRANTS IN PART the Sanctions Motion.

## II.   BACKGROUND

### A.   PRE-FIRST MSJ FACTS[1]

In March of 2013, Mr. Bassam Nafel ("Nafel" or "Defendant"), as owner of three rental properties in Baton Rouge, Louisiana ("Properties"), filed an insurance application ("Application") with Prime Insurance Group. (Doc. 1-4 ¶ 5; Doc. 15 at 2; Doc. 37-1 ¶ 2; Doc. 61 at 3.) As a result of one disclosure, however, the quote provided by the Southern General Agency, Inc. – South ("SGA"), a broker authorized to serve as agent for or representative of Century, was subject to certain conditions. (Doc. 31-1 at 1–2; Doc. 31-3 at 1.) So as to ensure these prerequisites were met, Ms. Dawn Loup ("Loup") posed a number of questions to Nafel. (Doc. 1-4 ¶ 6; Doc. 15 at 2; Doc. 37-1 ¶ 3; Doc. 61 at 3.)

To two questions—Have you had any policy or overage declined, cancelled or non-renewed during the prior three years? Have any crimes occurred or been attempted on your premises within the last three years?—Nafel answered "No." (Doc. 31-3 at 18; Doc. 31-4 at 1, 6; Doc. 61 at 3.) On the Application, Nafel left the Loss History section wholly blank and affixed

---

[1] The operative facts have been previously summarized and require no more than a perfunctory recitation. (Doc. 61 at 3–6.)

his signature below the following statement: "The undersigned is an authorized representative of the applicant and certified that reasonable enquiry has been made to obtain the answers to the questions on this application. He/she certifies that the answers are true, correct and complete to the best of his/her knowledge." (Doc. 31-3 at 27; Doc. 31-4 at 1–2; Doc. 61 at 3–4.) Therein, moreover, "Nafel certif[ied] that there have been no losses, accidents, or circumstances that might give rise to a claim under the insurance policy whose number is shown from 12:01 AM on 4/1/08 to 4-19-13 12:00 PM." (Doc. 31-3 at 29; Doc. 61 at 4.) Upon review of the Application, Century issued a commercial lines policy ("Policy"), providing general liability and commercial property coverage on the Properties, to Nafel on April 19, 2013. (*Id.* at 4; *see also* Doc. 31-2 at 5.)

On July 11, 2013, a fire occurred at one of the Properties, a building located at 8282 Stern Avenue ("Stern Property"). (Doc. 15 at 2; Doc. 61 at 1, 4.) Once Century received a notice of loss on July 31, 2013, it commenced an investigation during which the Application's numerous omissions and apparent falsities were unearthed. (Doc. 15 at 1–2; Doc. 61 at 4–5.) For example, according to Century, "Nafel [had] failed to disclose two (2) previous claims which were paid by prior insurance companies on properties insured by the Policy including a prior fire loss resulting in damages of approximately $155,000 in 2011 or 2012 and a prior claim on the Stern property for vandalism in 2012." (Doc. 15 at 1.) Accordingly, Century has sought to rescind the Policy pursuant to § 22:1311(F) or § 22:1314 of Louisiana's Revised Statutes[2] and receive reimbursement of the $20,000 previously advanced to Nafel. (Doc. 16 at 1–2; Doc. 31 at 1–2; Doc. 86 at 1–2.)

---

[2] In this ruling and order ("Ruling"), any and all references to "Section []" or "§ []" are to sections of this state compendium.

Other parties soon joined this action. On May 2, 2014, Whitney Bank ("Whitney") filed the Motion to Intervene as a Defendant under Rule 24, as it had loaned Nafel a sizable sum in accordance with a promissory note secured by a mortgage on the Stern Property. (Doc. 16 at 1.) In its words, Whitney stood as "the agency and attorney-in-fact for . . . Nafel," and claimed itself "entitled to the proceeds of all insurance protecting the Stern Property, not to exceed the balance of amounts owed to Whitney Bank by Bassam Nafel." (*Id.* at 1; *see also* Doc. 61 at 5–6.) Whitney's motion was granted on May 6, 2014, (Doc. 17), at which point its answer, which included a counterclaim against Nafel, was docketed, (Doc. 18). Less than one month later, on June 12, 2014, Underwriters filed a Motion for Leave to File a Complaint for Intervention, (Doc. 24), a request granted on July 10, 2014, (Doc. 25). In its complaint, Underwriters named Century, Nafel, and Whitney as defendants. (Doc. 26.)

## B.    RULING ON FIRST MSJ

On September 12, 2014, Century filed the first Motion for Summary Judgment ("First MSJ"), (Doc. 31), which this Court denied on August 24, 2015, in a thirty-eight page Ruling and Order ("First MSJ Ruling"), (Doc. 61).

In this first order, this Court began with § 22:1311(F). After noting that rescission under this statute requires proof of three elements—"(1) [T]he insured misrepresented or concealed a fact; (2) the misrepresented or concealed fact was material; and (3) the misrepresentation or concealment was made with the actual intent to deceiver the insurer"—this Court found a genuine dispute as to several material facts. (Doc. 61 at 15–16.) In particular, questions remained regarding whether any false statements in the Application were "due to the agent's error or miscommunication between [Nafel] and the agent." (*Id.* at 21.) As to the issue of intent, this

question's viability could not be ignored, Century "solely rel[ying] on Loup's affidavit to support the notion that it was Nafel who made misrepresentations on the [A]pplication" and Nafel relying on his own contrary declaration. (*Id.* at 22.) As such, under Louisiana law, "[t]his necessar[ily] raise[d] an issue of fact . . . because if it was Loup who made the misrepresentations, then Nafel cannot have had the requisite intent to deceive." (*Id.*) The same problem—"a battle of affidavits"—left this Court unable to determine, as a matter of incontestable fact, who bore responsibility for the Application's unfilled Loss History section and failure to acknowledge any prior policy's decline, cancellation, or non-renewal or criminal history. (*Id.* at 22–23, 26–34, 36–37.) In other words, to determine who must be blamed, as a matter of law and fact, for the Application's sundry errors and flaws and whether Nafel acted with the requisite intent to deceive required one or more "credibility determination[s]," a task barred by Federal Rule of Civil Procedure 56.[3]

In addition, this Court denied summary judgment due to the uncertainty of the materiality of Nafel's various misrepresentations. (*Id.* at 34.) To establish this requisite element, Century relied on an affidavit sworn by Ms. Sandra Nance ("Nance"), a Property Product Manager at Century's Underwriting Department, maintaining that Century would not have issued the Policy "[i]f Nafel had provided truthful information on his application regarding prior cancellation of a policy for non-payment of premium, history of criminal activity and damages on the property, and prior claim history" ("First Nance Affidvait"). (Doc. 31-9 ¶ 26; *see also* Doc. 61 at 34.) Stressing that "the only evidence of whether Century would have declined to issue the [P]olicy is th[is] affidavit," this Court pointed to a well-settled principle "that affidavits setting forth

---

[3] In this Ruling, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

ultimate or conclusory facts and conclusions of law are insufficient to sustain a motion for summary judgment." (Doc. 61 at 35–36 (citing *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2012 U.S. Dist. LEXIS 21791, at *5, 2012 WL 579439, at *2–3 (E.D. La. Feb. 22, 2012)).) Two contrary affidavits had again been submitted, and neither declaration contained evidence that a reasonable jury could not disbelieve. (*Id.*) Therefore, in accordance with well-established law, *see infra* Part III.A, this Court could not find an absence of genuine dispute over key material facts. (Doc. 61 at 36.)

Unsurprisingly, precisely the same defects left this Court unable to grant judgment in Century's favor under § 22:1314. (*Id.* at 37–38.)[4] As this Court then wrote, this section, like § 22:1311(F), required proof of "a fraudulent intent to mislead or deceive" and the making of "misrepresentations . . . by [an] insured with knowledge of their falsity." (*Id.* at 38.) As such, because a question of fact "as to whether Nafel or Loup made the [false] representations on the insurance application" remained, summary judgment on Century's § 22:1314 claim could not be granted. (*Id.*)

## C.    PROCEDURAL HISTORY: POST-FIRST MSJ RULING

On February 22, 2016, Century filed the MSJ. (Doc. 86.) Underwriters responded with the MSJ Opposition on March 14, 2016. (Doc. 90.) On March 28, 2016, Century docketed the MSJ Reply. (Doc. 92.) On February 13, 2016, Century submitted the Motion for Sanctions. (Doc. 84.) Underwriters countered with the Sanctions Opposition on March 4, 2016, (Doc. 89) to which Century responded with the Sanctions Reply on March 28, 2016, (Doc. 93.)

---

[4] Other reasons, including several contractual ambiguities, (Doc. 61 at 23–26), are not relevant to this latest motion.

**D.      PARTIES' ARGUMENTS**[5]

**1.      MSJ: Century versus Underwriters**

In the MSJ and MSJ Reply, Plaintiff echoes arguments for summary judgment made in the First MSJ, (Doc. 31), that it is entitled to a ruling that the underlying commercial insurance policy from which this suit has sprung was void *ab initio* pursuant to two separate Louisiana statutes. (Doc. 86-2 at 1.) New evidence adduced has left no doubt about this legal conclusion, Century now maintains, and no other result can follow as a matter of plain law. Century first characterizes the First MSJ Ruling thusly: there, "This Court . . . determined that Century ha[d] successfully shown that there" were at least two misrepresentations in the Application. (Doc. 86-2 at 2.) Although Century has uncovered one more alleged misrepresentation, it contends that "the only potential factual disputes that could remain would lie in the materiality of the risk to Century and the intent to deceive." (*Id.* at 2–4.)

As to materiality, Century cites to a second affidavit signed by Nance ("Second Nance Affidavit") and "guidelines" referenced therein. (*Id.* at 4.) Both these pieces of evidence, Century asserts, carry its "burden to unequivocally show that [if] it had actual knowledge of the misrepresented facts, it would not have issued the policy, or at minimum, would have required a higher premium." (*Id.*) Standing alone, this sworn fact more than satisfies the definition of materiality adopted by the Fifth Circuit in *Security First National v. Progressive Casualty Insurance Company*, No. 92-4541, 1994 U.S. App. LEXIS 43608, 1994 WL 397946 (5th Cir. La. July 18, 1994): "A false statement on an insurance application is material if 'knowledge of the

---

[5] Neither Nafel nor Whitney has filed a motion relevant to the disputes summarized in this section and the subject of this Ruling.

facts would have **influenced** the insurer in determining whether to assume the risk or in fixing the applicable premium.'" (Doc. 86-2 at 4–5 (emphasis in original).) Because Nafel's misrepresentations would have "influenced" Century's decision based on the Second Nance Affidavit, "Century has carried its burden as a matter of law in establishing the materiality of the risk element." (*Id.* at 5.) As to the intent, Century cites to one new fact—"[T]he undisputed facts establish that Loup was Nafel's **broker**, not Century's agent," based again on *Security First National*—from which one consequence flows: "As Nafel's broker, any dispute as to who did what is mooted because Loup's conduct is attributed to Nafel." (*Id.* at 5 (emphasis in original).) With the relevant misrepresentations having been made by either Nafel or Loup, Century is entitled to summary judgment as a matter of law" pursuant to either § 22:1311(F) or § 22:1314. (*Id.* at 5–7.)[6]

Underwriters, in turn, first deny that the facts have changed since the First MSJ's filing. (Doc. 90 at 2.) Instead, even now, "**Century has not provided any evidence whatsoever of any 'intent to deceive'** on the part of . . . Nafel." (*Id.* (emphasis in original).) According to Underwriters, Nafel's recent deposition "reinforces the presence of disputed factual issues pertaining to the alleged 'misrepresentations' that Century asserts," as "Nafel testified that . . . he provided . . . Loup with honest and accurate information in response to questions she asked him, to the best of his knowledge." (*Id.*) Questions, then, remain as to "whether Nafel provided false information during the application process or whether any incorrect information in the application was either attributable to . . . Loup, through negligence, error, or omission, or may have resulted from miscommunication between Nafel and Loup." (*Id.*) Even if Loup is regarded

---

[6] In its last argument, Century contends that "a determination that the Policy is void *ab initio*" means every other party's claims fail. (Doc. 86-2 at 7.) As this Court finds that determination still requires resolution of disputed facts, this final point need not be dissected.

as Nafel's agent, Century would "still need to show that either Nafel or Loup made an *intentional* misrepresentation with an ***intent to deceive***," which it has not yet done. (*Id.* at 3 (emphasis added).) "A communication failure between Loup and Nafel" may still explain the Application's flaws, rather than any intentional deceit, and if the factfinder so believes, choosing to credit Nafel but not Loup, Underwriters' case will fail. (*Id.*) Finally, Underwriters question the applicability of the "unpublished" *Security First National*, arguing its seeming inconsistency with "current law" and did not analyze "the 'intent to deceive' issue" so crucial to this proceeding. (*Id.* at 4–5.) In short, as the Underwriters maintain, "the evidence has not changed since this Court denied Century's first Motion for Summary Judgment." (*Id.* at 5.)

Having propounded this newest line of attack on the MSJ, Underwriters reargue the reasons against summary judgment advanced in its original opposition to the First MSJ. (*Id.*) First, "pertinent sections of the . . . Application relied upon by Century do not state what Century represents them to state." (*Id.*) Second, Nafel "disputes that he made any misrepresentations or that he gave false, misleading or inaccurate information in the application process." (*Id.*) Third, "Century has not met its burden of establishing an intent to deceive or materiality." (*Id.*) Fourth, "Century owes coverage directly to Nafel's mortgage holder, Whitney Bank, under the mortgage clause of its policy, regardless of whether it owes coverage to Nafel." (*Id.*) Each of these four points is further detailed in the second half of the MSJ Opposition, including Nafel's continued disagreement with Loup's testimony and the rather ambiguous Second Nance Affidavit. (*Id.* at 6–10.)

2.      **Sanctions: Century versus Underwriters**

In the Sanctions Motion, Century invokes Rule 37 and seeks four different

punishments—(1)"That Nafel's Answer be struck in whole"; (2) "That Nafel's Counter Claim be

struck in whole, with prejudice"; (3) "That there be a default judgment against Nafel and in favor

of Century on its complaint finding that (a) the . . . Policy is rescinded as void *ab initio*; and (b)

Nafel be ordered to pay Century $20,000 previously paid to Nafel by Century"; (4) "That Nafel

be ordered to pay the expenses and fees incurred by Century because of his conduct necessitating

this Motion"; and (5) "Any and all other relief the Court deems appropriate under law and

equity"—for Nafel's "continued refusal to respond to Century's Requests for Production and for

his refusal to fully comply with" the order of the United States Magistrate, the Honorable

Richard L. Bourgeois, Jr. ("MJ"), issued on January 19, 2016 ("MJ Order"), (Doc. 83).[7] (Doc. 84

at 1–2.) As Century contends, Rule 37 permits the sanctions requested against Nafel for "his

continued refusal to participate in discovery, flagrant denial of this Court's authority and Orders,

and obstruction of the progression of this case." (Doc. 84-1 at 1.) He has "mocked the discovery

process," and his "continued refusal . . . has simultaneously precluded Century from effectively

prosecuting its claims and asserting its rights, thereby denying Century its day in [c]ourt." (*Id.*)

In support, Century cites to the MJ Order, in which the Magistrate Judge warned Nafel that

"[f]ailure to provide responses to Century's First Set of Requests for Production will be a

violation of this court order and will subject . . . Nafel to further sanctions, including the

potential award of a default judgment and dismissal of . . . Nafel's counterclaims," (Doc. 83 at 5–

6). (Doc. 84-1 at 2.) However, despite this order and throughout this litigation, Nafel has

---

[7] Though motions for discovery sanctions generally fall within the MJ's purview, the most
severe sanction—dismissal—can only be issued by a district court judge.

engaged in "obstreperous behavior," revealed a lack of any "intention of complying with th[e MJ Order]." (*Id.* at 3.) Afforded "numerous opportunities to comply," Nafel has engaged in a "pattern of behavior" that forces Century "to proceed to trial without basic discovery from Nafel." (*Id.*) Such a result would be "a miscarriage of justice," an unmerited reward for Nafel's "record of contumacious conduct" and "continued, stubborn resistance to the authority of this Court." (*Id.*) Incorporating by reference arguments made in its prior motion for sanctions, (Doc. 74-1), Century relies on Rule 37 as the means to "appropriate[ly]" punish a party who was warned of "potential dismissal if he failed to comply yet continued his defiance." (*Id.* at 4.)

In the Sanctions Opposition, Underwriters makes three responses. First, it claims that Nafel did appear for the deposition for which he was scheduled. (Doc. 89 at 1.) Though it "acknowledge[s] that Century is entitled to responses to its Requests for Production," Century's counsel could have inquired as to these matters during Nafel's deposition; however, he "chose not to do so." (*Id.*) Rather than seeking justice, "Century seems intent on pursuing the relief it ultimately seeks in this case by technicality in pursing [sic] drastic sanctions for discovery violations." (*Id.* at 1–2.) As Underwriters see it, Century is now attempting to "take advantage of a pro se defendant who clearly does not have a full understanding of procedural matters in a lawsuit." (*Id.* at 2.) Second, Underwriters emphasize that Century is asking for a "drastic remedy," "a serious sanction that implicates due process and should not be imposed without prior warning."[8] (*Id.*) True, Nafel has acted imperfectly, but his recent behavior, including attending his deposition, indicate that he "is clearly not avoiding this lawsuit entirely." (*Id.* at 3.)

---

[8] This assertion overlooks the mention of this specific sanction in the MJ Order. (Doc. 84 at 5–6.) Admittedly, however, this order refers to the possibility of a default judgment against Nafel only. (*Id.*)

Third, "dismissal of Nafel's claims and/or default judgment against him would effectively result in a severe sanction, and unfair prejudice, to Underwriters based on the conduct of another party." (*Id.*) The reason is simple: if Century prevails on its action to rescind the policy, Whitney will seek coverage of the outstanding loan balance from the Underwriters, who would be obligated to pay due to the absence of any valid insurance protecting Whitney's interest in Nafel's Stern Property. (*Id.* at 3–4.) In this crucial regard, the current dispute between Nafel and Century has "implications beyond the rights and obligations of those two parties," a fact militating against the "drastic sanction of dismissal of Nafel's Answer and Counter-claim" requested in the Sanctions Motion. (*Id.* at 4.)

## III.   DISCUSSION

### A.   GOVERNING LAW

### 1.   Summary Judgment Standard

Per Rule 56(a), summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.*, 587 F. App'x 182, 186 (5th Cir. 2014). A court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusional allegation and details, speculation, . . . unsubstantiated

assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

Still, "[w]hen both parties have submitted evidence of contradictory facts," *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005), a court is bound to "draw all reasonable inferences in favor of the nonmoving party," *Reeves v. Sanderson Plumping Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105, 122 (2000); *see also Anderson*, 477 U.S. at 248 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinnings of [factual disputes]"). It thus cannot "make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. This command—that a district court "eschew making credibility determination or weighing the evidence," *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011) (citing *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)); *accord, e.g.*, *Flythe v. Dist. of Columbia*, 791 F.3d 13, 22 (D.C. Cir. 2015)—applies so long as the record retains patches of reasonable ambiguity that have not been artificially manufactured. *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

So constrained by Rule 56, this Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A WRIGHT, *supra*, § 2529. Effectively, therefore, although this Court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, *cited in Havera*, 723 F.3d at 591. Within the narrow domain of Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial

or frivolous, factual disputes that may affect the outcome of the case under the applicable

substantive law, *see Anderson*, 477 U.S. at 248, and (2) so long as the nonmovant does not

exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations,"

"unsubstantiated assertions," or "a scintilla of evidence," *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir. 1994).

### 2.      Sanctions Standard

Delineating the federal courts' "pre-trial deposition-discovery mechanism," Rules 26

through 37 specify the obligations of parties and lawyers alike during this frequently contentious

stage of modern litigation. *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S. Ct. 385, 388, 91 L. Ed.

451 (1947). Crucially, as a matter of well-settled precedent, the courts' construction of these

varied precepts is guided by Rule 1 and a general distaste for limiting proper discovery but for

the reasons specified in Rule 26(b)(1) and (b)(2)(C). *The Scotch Whisky Ass'n v. U.S. Distilled

Prods. Co.*, 952 F.2d 1317, 1319 (Fed. Cir. 1991) ("Rule 1 sets the policy for construing all of

these rules."); *United States v. Hoffa*, 497 F.2d 294, 296 (7th Cir. 1974) ("All of the Federal

Rules of Civil Procedure, including Fed. R. Civ. P. 54(d) relating to costs, must be interpreted in

light of Fed. R. Civ. P. 1."); *see generally* Arthur R. Miller, *Simplified Pleading, Meaningful

Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*,

88 N.Y.U. L. REV. 286 (2013) (summarizing the relevant case law and tenets); Amir

Shachmurove, *Disruptions' Function: A Defense of (Some) Form Objections under the Federal

Rules of Civil Procedure*, 12 SETON HALL CIR. REV. 161 (2016) (same). Like other federal

procedural provisions adopted pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, the Rules

have "the force and effect" of federal statutory law. *Police & Fire Ret. Sys. of City of Detroit v.*

*Indymac MBS, Inc.*, 721 F.3d 95, 107 n.13 (2d Cir. 2013) ("The Federal Rules of Civil Procedure . . . have the force and effect of a federal statute." (internal quotation marks omitted)); *Morel v. Daimler-Chrysler AG*, 565 F.3d 20, 24 (1st Cir. 2009) ("[A]s long as a [federal] rule is consonant with both the Constitution and the Rules Enabling Act . . . that rule must be given effect regardless of contrary state law.").

So as to ensure compliance with these Rules' commands, Rule 37 provides "generally for sanctions against parties or persons unjustifiably resisting discovery." FED. R. CIV. P. 37 advisory committee's note to 1970 amend.; *see also, e.g.*, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S. Ct. 2455, 2462, 65 L. Ed. 2d 488 (1980). Pursuant to Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B); *Hill v. Emory Univ.*, 346 F. App'x 390, 392 (11th Cir. 2009). Justification for such a motion arises whenever "a deponent fails to answer a question asked under Rule 30," "a corporation fails to make a designation under Rule 30(b)(6) or 31(a)(4)," "a party fails to answer an interrogatory submitted under Rule 33," or "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(i)–(iv); *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698 (S.D. Ga. 2012) (quoting Rule 37(a)(3)(B)(iv)); *Huthnance v. District of Columbia*, 268 F.R.D. 120, 121 (D.D.C. 2010) (quoting Rule 37(a)(3)(B)). Another subparagraph, Rule 37(c) is directed at failures to disclose, supplement, or admit. FED. R. CIV. P. 37(c). "[O]n motion and after giving an opportunity to be heard," a court may "order payment of the reasonable expenses . . . caused by the failure," "inform the jury of the party's failure," and "impose other appropriate sanctions" specified in Rule 37(b)(2)(A). FED. R. CIV. P. 37(c)(1); *Asher v. Colgate-Palmolive Co.*, 278 F.R.D. 608, 611 (D. Colo. 2011). Additionally, a failure to admit as required by Rule 36 may

also lead, upon the requesting party's movement, to responsibility for the propounding party's "reasonable expenses, including attorney's fees." FED. R. CIV. P. 37(c)(2); *Kelly v. McGraw-Hill Cos., Inc.*, 279 F.R.D. 470, 472 (N.D. Ill. 2012). Rule 37(d)(1), in turn, authorizes a court to order sanctions "on motion" if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written responses." FED. R. CIV. P. 37(d)(1)(A); *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 124 (1st Cir. 2012). Meanwhile, Rule 37(d)(1)(A)(ii) allows for sanctions for "fail[ing] to serve . . . answers, objections, or written response[s]" to another's request for production under Rule 34. FED. R. CIV. P. 37(d)(1)(A)(ii).

The sanctions allowable for these sundry violations appear in Rule 37(b)(2)(A). FED. R. CIV. P. 37(b)(2)(A). A court may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FED. R. CIV. P. 37(b)(2)(A)(i). Or it may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(ii). Or, if it prefers, it may "strik[e] pleadings in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(iii). Relevant here, a court can always "dismiss[] . . . [an] action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A)(v).

## B.   APPLICATION

### 1.   Propriety of Summary Judgment

As Century correctly notes, (Doc. 85-2 at 4–5), § 22:1311(F) and § 22:1314 contain the same test for materiality, one which solely "involves considering whether knowledge of the facts would have influenced the insurer in determining whether to assume the risk or in fixing the

applicable premium," *Wohlman v. Paul Revere Life Ins. Co.*, 980 F.2d 283, 286 (5th Cir. 1992);

*accord, e.g.*, *Wall v. Northwestern Mut. Life Ins. Co.*, No. 06-2365, 2008 U.S. Dist. LEXIS

74724, at *15, 2008 WL 4450283, at *4 (W.D. La. Sept. 29, 2008). As *Wohlman* and related

jurisprudence makes clear, for materiality to be found, "the influence" must be verifiable and

apparent, real and certain, not merely conjectural. A falsity uttered or an omission uncorrected

that technically may or could have affected the ultimate decision—but did not actually do so—

will not suffice to prove either's materiality. *Manzella v. Paul Revere Life Ins. Co.*, 872 F.2d 96,

99 (5th Cir. 1989) ("In order for the applicant's misrepresentations to be material, therefore, it is

not necessary that they increase the underwriting risk involved so long as they *affect* the decision

of the insurer to issue the policy." (emphasis added)). And "[i]f the information given by the

applicant is false, but the insurance company would have issued the policy anyway, then it is not

material." *Wohlman*, 980 F.2d at 286; *accord, e.g.*, *U.S. Life Ins. Co. in N.Y. v. Watts*, 199 F.

Supp. 2d 492, 494 (E.D. La. 2001); *see also, e.g.*, *Overturf v. Aero Ins. Agency, Inc.*, 686 F.2d

350, 353 (5th Cir. 1982) (stating "materiality," in this context, "means that the statement must

have been of the nature that, had it been true, the insurer would not have contracted or would

have contracted only under a higher premium rate" (internal quotation marks omitted)).

Referencing this materiality criterion, "[t]he intent to deceive" required by§ 22:1311(F)

and § 22:1314 "must be determined from the attending circumstances which indicate [both] the

insured's knowledge of the falsity of the representations made in the application and his

recognition of the materiality thereof, or from circumstances which create a reasonable

assumption that the insured recognized the materiality of the misrepresentation." *State Farm

Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La. App. 2 Cir. 05/19/10); 36 So. 3d 1142, 1147; *see also

Willis v. Safeway Ins. Co.*, 42,665 (La. App. 2 Cir. 10/24/07); 968 So. 2d 346, 350. Regardless of

the surroundings circumstances, however, "[a]n insurance applicant may rely upon and sign an application as completed by the agent and may rely upon the agent's expertise in interpreting the nature of the information sought by the company he represents." *State Farm Auto Ins. Co.*, 36 So. 3d at 1147. Consequently, "if the agent by reason of mistake, fraud, omission, or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured."[9] *Harris v. Guaranty Income Life Ins. Co.*, 75 So. 2d 227, 229 (La. 1954); *accord, e.g.*, *Toups v. Equitable Life Assurance*, 94-1232 (La. App. 3 Cir. 5/3/95); 657 So. 2d 142, 147; *Bertrand v. Protective Life Ins. Co.*, 419 So. 2d 1254, 1257 (La. App. Ct. 1982). In such misrepresentation cases, as with the element of falsity, the burden lies upon the insurer to prove both materiality and an intent to deceive. *Topps*, 396 So. 2d at 395; *see also, e.g.*, *Stoma v. Prudential Ins. Co. of Am.*, 281 So .2d 871, 873 (La. Ct. App. 1973). Based on this law, for two reasons, Century has not met its high burden, and sufficiently significant questions of material fact remain which preclude summary judgment on Century's claims under both § 22:1311(F) and § 22:1314.

First, the Second Nance Affidavit is not as dispositive as to the issue of materiality and intent as Century believes. According to its ninth paragraph, "[i]f Nafel had disclosed any of . . . [the omitted] information, the [relevant] Guidelines would have required that his application be

---

[9] Century attempts to evade this principle by characterizing Loup as the agent, not of her company or Century, but of Nafel. But the reality is rather different. Based on the papers, Loup was "agent for . . . .Nafel's *application*," (Doc. 86-5 ¶ 5) to SGA, the authorized agent or representative of Century, (Doc. 31-3 at 1). Loup, in other words, was never Nafel's personal agent; she always worked on behalf of a broker who in turn served Plaintiff. Of course, regardless of Loup's relationship as to Nafel, as the Application was completed by Loup, those misrepresentations cannot be charged to Nafel as a matter of incontrovertible fact and law at *this time*. She may have still been his agent, but the omitted or false information excluded or included without the requisite intent to dissemble by either person. Incompetence or negligence, if honest, will not do, as case law declares.

submitted to Underwriting for further review." (Doc. 86-5 at 2.) Upon that submission, "Underwriters *could* request additional information regarding the conditions [of the relevant properties]." (*Id.* (emphasis added).) Disclosure of certain conditions[10]—"two or more mortgage holders on the same building" and "a lapse in insurance coverage"—would have led to a decline of coverage in the absence of an "adequate explanation." (*Id.*) Disclosure of a third condition— "more than three claims in the past three years or any one claim in excess of $5,000 in the past five years"—"would have increased the requisite premium." (*Id.*) She then concludes: "[I]f Ms. Nance had been presented with an application from Mr. Nafel with full disclosure, she would have declined coverage entirely." (*Id.*) Seemingly, at first blush, these assertions could be said to establish the omissions' and misrepresentation materiality.[11]

Yet, this absolute statement cannot be perfectly squared with the implications raised by other paragraphs. The possibility of such a wholesale decline is mentioned in only one paragraph, but, as that sentence expressly affirms, this result would come to pass only "without an adequate explanation." (*Id.*) Subsequently, in paragraph twelve, Nance explicitly denies that "[u]nderwriting is . . . governed by a formulaic set of guidelines" and avers that each relevant underwriting agent is "granted a modified level of autonomy to review each matter on a case by case basis, adjust premiums and determine whether or not to decline to write coverage." (*Id.*) In short, while parts of the Second Nance Affidavit support Century's motion, others emphasize the discretionary and fluid nature of an insurer's ultimate decision, and it affirms no more than the kind of decision that Nance, not Loup or the SGA agent in charge at the time, may have made when Nafel first tendered the Application. Precisely because Nance herself admits that the

---

[10] Century mislabels the relevant paragraph as number seven rather than number eight.

[11] A factfinder, for example, may find precisely this. The standard imposed by Rule 56 is, in effect, much higher. *See supra* Part III.A.1.

process is subject to no "formulaic set of guidelines" and leaves unexplained the contradiction between paragraphs thirteen (decline only "without an adequate explanation") and fourteen (averring a certain decline of the Application), it cannot be said, as a matter of undisputed fact, that Nafel's alleged misrepresentations would have surely "affected" his coverage. In the absence of such absolute certainty about the actual influence on Century's deliberations of Nafel's statements and omissions, none can be deemed "material" under Rule 56. *See, e.g.*, *Rowe v. Metro. Life Ins. Co.*, No. 00-2211 Section "J"(1), 2001 U.S. Dist. LEXIS 8571, at *5, 2001 WL 685940, at *2 (E.D. La. June 18, 2001) ("The insurer must *unequivocally* show that had it had actual knowledge of the misrepresented facts, it would not have issued the policy." (emphasis added) (citing *Wohlman*, 980 F.2d at 286)). A factfinder could, even with the Second Nance Affidavit, find Nance's conclusion—that the Application would have been denied—less than "unequivocal[]," *Rowe*, 2001 U.S. Dist. LEXIS 8571, at *5, 2001 WL 685940, at *2, as her own other paragraphs intimate. Accordingly, compelled to "disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves*, 530 U.S. at 151, this Court cannot grant summary judgement solely on the basis of this newest bit of ambiguous evidence.

Second, the Second Nance Affidavit, like the First Nance Affidavit, is still opposed by yet other affidavits and more, if not much more, than a scintilla of evidence. Having added one more sworn statement and one more set of guidelines, ones which, according to Nance herself, do not foreclose coverage automatically, dueling affidavits and incompatible assertions of fact persist unabated. A second affidavit by a party's agent, one who has previously submitted a different affidavit, does not suddenly negate this reality. Thus, the general principle that this Court has cited in the First MSJ Ruling, (Doc. 61 at 35)—"It is well-settled law that affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to sustain a

motion for summary judgment," *S. U.S. Trade Ass'n*, 2012 U.S. Dist. LEXIS 21791, at \*5, 2012 WL 579439, at \*2—must still control. Indeed, this rule must be more rigorously applied in light of the ambiguous inconsistencies within the Second Nance Affidavit, especially when coupled with Nance's unexplained failure to attest to these same factual allegations in the First Nance Affidavit and as support for Century's first dispositive motion. As the law has long favored resolution of disputes on the merits when colorable, if not overwhelming, evidence exists for the contending sides, it is not within any court's province to "determine liability on a battle of affidavits." *Walters v. Western State Hosp.*, 864 F.2d 695, 699 (10th Cir. 1988). Rather, when there is a battle of affidavits placing different constructions on the facts, a "'he said-he said' battle" has been joined, and this reality frequently raises fact issues as to intent and reasonableness that foreclose summary judgment. *Gardner v. Hill*, 195 F. Supp. 2d 832, 839–40 (E.D. Tex. 2001). Revealingly, as the MSJ Opposition notes, Underwriters still vigorously contest Century's characterization of Nafel's statements and omissions as either "material" or "false." (Doc. 90 at 5.) In light of these facts, just as it refused to do so on August 24, 2015, (Doc. 61 at 35–36), this Court will not grant summary judgment based on a battle of affidavits which do not resolve still festering disputes over key material facts. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Philly Family Practice, Inc.*, 525 F. Supp. 2d 718, 726 (E.D. Pa. 2007); *Welch v. Liberty Mach. Works, Inc.*, 23 F.3d 1403 (8th Cir. 1994); *Metro. Life Ins. Co. v. Browning*, 839 F. Supp. 1508, 1510 (W.D Okla. 1993); *Chicago World Soccer, Inc. v. Grapa, Inc.*, No. 89 C 2290, 1990 U.S. Dist. LEXIS 8691, at \*19, 1990 WL 103283, at \*6 (N.D. Ill. July 13, 1990); *United States v. Hardage*, 733 F. Supp. 1424, 1428 (W.D Okla. 1989); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 719 (10th Cir. 1988).

Considering these reasons in light of the old and oft-cited axiom that "cases which turn on state of mind are rarely appropriate for summary judgement," *Pac. Ins. Co. v. La. Auto. Dealers Ass'n*, No. 01-30081, 2001 U.S. App. LEXIS 31963, at \*14–15, 2001 WL 1013089, at \*4 (5th Cir. Aug. 3, 2001) (collecting cases, including *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1326 (5th Cir. 1996); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 n. 3 (5th Cir. 1993), and *Krim v. BancTexas Grp.*, 989 F.2d 1435, 1449 (5th Cir. 1993)), Century's second request for summary judgment on the basis of one more affidavit must fail.

### 2.      Propriety of Sanctions

As even Underwriters partially acknowledge, (Doc. 89 at 2–3), Nafel has repeatedly flouted his duties under the Rules' fifth title. To requests for production duly propounded in accordance with Rule 34, he has chosen silence. (*Id.* at 1.) He did eventually appear for a deposition, but his appearance was secured by means of a judicial order, (Doc. 68), though no such leave of court should be required for a party's deposition under Rule 30, FED. R. CIV. P. 30(a)(1). In fact, his "contumacious[ness]" and "resistance" had become clear long before Century tendered the present motion, its second request for sanctions in this long-running case. (Doc. 84-1 at 3–4.) As the MJ concluded on January 19, 2016, "no dispute" then existed that Nafel had already "failed to attend his noticed deposition and failed to respond to discovery requests made pursuant to Rule 34," leading to the imposition of certain sanctions and an order to compel. (Doc. 83 at 5–6.)

For years, the Rules have placed upon all parties and lawyers the "professional obligation to conduct discovery in a diligent and candid manner." THE SEDONA CONFERENCE, THE SEDONA CONFERENCE COOPERATION PROCLAMATION 1 (2008). This imperative, once implicitly and now

explicitly, arises from Rule 1. F_{ED}. R. C_{IV}. P. 1 advisory committee note (2015 amend.)

("[*P*]*arties* share the responsibility to employ the rules" so as to "to secure the just, speedy, and inexpensive determination of every action" and must avoid "over-use, misuse, and abuse of procedural tools that increase cost and result in delay."). With this principle so firmly embedded in the Rules, *see* Shachmurove, *supra*, at 170–75 (explaining how this notion affects the Rules' construction), this Court must find that Nafel—and Nafel alone—contravened his discovery obligations, triggering Rule 37.[12] F_{ED}. R. C_{IV}. P. 37.

Technically, under Rule 37, dismissal as a discovery sanction is available if there is (1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice. *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (11th Cir. 2014). However, as this Court has recently explained, "Rule 37 was designed to maximize the judiciary's flexibility in managing the kind of carelessness and even disobedience displayed by the Plaintiff, ensuring that legitimate cases are not unnaturally terminated on the basis of technicalities and something less than deliberate intent." *Rivera v. Martin J. Donnelly Antique Tools*, No. 3:14-CV-00667-JWD-EWD, 2016 U.S. Dist. LEXIS 47095, at *21, 2016 WL 1389984, at *7 (M.D. La. Apr. 7, 2016). Even for serious violations, the sanctions ordered must be "just," F_{ED}. R. C_{IV}. P. 37(b)(2)(A), and tempered by "the strong public policy which favors adjudication of cases on their merits," *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 108 (D. Colo. 1996). So motivated, "courts have been reluctant to order dismissal in the absence of clear and convincing evidence of willfulness, bad faith, or some fault of a party other than inability to comply and where no evidence has been destroyed or suppressed, leaving the opponent unable to mount a credible

---

[12] Notably, once such a violation is found, a "district court is not constrained to impose the least onerous sanction available." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999).

defense or offense." *Rivera*, 2016 U.S. Dist. LEXIS 47095, at *22, 2016 WL 1389984, at *7;

*accord, e.g.*, *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992).

Based on this jurisprudence, this Court cannot grant the most drastic sanctions—a default

judgment and the striking of Nafel's answer and counterclaim, (Doc. 84 at 2)—for two separate

reasons. First, as both its two dispositive motions and the vast majority of the evidence suggest,

Century has been able to construct a cogent and effective case. Meanwhile, as against Century's

accumulated evidence, Nafel has provided little more than a scintilla, and it thus cannot be truly

said that Century has been "precluded . . . from effectively prosecuting its claims and asserting

its rights, thereby denying Century its day in [c]ourt," as it now claims, (Doc. 84-1 at 1). *Cf., e.g.*,

*ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094–95 (8th Cir. 2011) (discussing

the various ways prejudice can accrue after discovery has begun); *Martin v. DaimlerChrysler

Corp.*, 251 F.3d 691, 694–95 (8th Cir. 2001) (affirming dismissal in response to perjurious

nondisclosure in discovery).

Second, whatever Nafel's failings, due to this case's alignment of parties, such sanctions

would not just punish Nafel for his particular misdeeds. Instead, such an order would

simultaneously resolve every dispute between Century, Underwriters, and Whitney in Century's

favor. (Doc. 89 at 4.) In Century's words, the order it seeks would mete out the very kind of

injustice that it abhors in the Sanctions Motion, depriving others' of their own day in court and of

the opportunity to "effectively prosecut[e]" their claims and "assert[] their rights," (Doc. 84-1 at

1). Because a court's chosen sanctions must be just pursuant to Rules 1 and 37(b)(2), such a

disproportionate punishment of an innocent party for another's behavior should normally not be

authorized, *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996), especially when the

party whose discovery has been stymied has not had its ability to mount a case irreparably and

fatally compromised. Here, such a scenario has come to pass, Century's case still potently made and Underwriters and Whitney uncharged (and innocent of) any violation of the discovery rules. For these reasons, this Court will not issue a default judgment and strike an answer and counterclaim.[13]

## IV.   CONCLUSION

As questions of material fact still exist, this Court will not grant the MSJ, Century's second try. Only a credibility determination could resolve these festering queries, and no court, including this one, may make such determinations pursuant to Rule 56. So long as a jury could still disbelieve Loup and Nance, the linchpins of Century's two motions, summary judgment cannot be ordered, and that possibility still remains, backed by more than a scintilla of the evidence so far accumulated. Additionally, despite Nafel's noncompliance with the Rules,[14] several of the sanctions sought by Century are inconsistent with the principles of justice and proportionality embedded within Rule 37. Accordingly, this Court orders as follows:

1. Century Surety Company's Motion for Summary Judgment, (Doc. 86), is DENIED.

1. Century Surety Company's Motion for Sanctions, (Doc. 84), is DENIED IN PART and GRANTED IN PART. Century's request for three sanctions—that Nafel's answer be struck in whole, his counterclaim be struck in whole and with prejudice, and that a default judgment against Nafel and in favor of Century on its complaint—are DENIED. However, Century's request for sanctions in the form of reasonable expenses and fees incurred by Century due to the conduct necessitating its motion is GRANTED. On or before **August 12, 2016**, at **5:00**

---

[13] Still, for his actions, Nafel himself must—and will—be punished. *See infra* Part IV.

[14] This Court makes one final note in this regard: as Nafel was listed as a witness in the Parties' pretrial order, he may still be allowed to testify to the extent authorized by law.

**p.m.**, Century's counsel must provide this Court with a timesheet of the hours spent solely on this motion's preparation. As soon as possible thereafter, this Court will issue an order for payment of reasonable attorneys' fees.

Signed in Baton Rouge, Louisiana, on <u>July 28, 2016</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**